IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| DESKTOP METAL, INC., *et al.*, | Case No. 25-90268 (CML) |
| Debtors.[1] | (Joint Administration Requested) |

**DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING AND APPROVING THE PRIVATE SALE OF THE DEBTORS' PURCHASED ASSETS AND PURCHASED EQUITY FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; AND (II) GRANTING RELATED RELIEF**

> **Emergency relief has been requested. Relief is requested not later than July 29, 2025.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

The above-captioned debtors and debtors-in-possession (the "Debtors") file this emergency motion (the "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), pursuant to sections 105(a) and 363 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (a) authorizing **at an emergency first day hearing,** the Debtors to enter into that certain *Share and Asset Purchase Agreement*, dated as of July 27, 2025 (together with all other agreements, documents, and instruments deliverable thereunder, attached thereto, or referenced therein, and as may be amended, modified, or supplemented, the "APA"), by and

---

[1] The Debtors in these chapter 11 cases and the last four digits of their respective federal tax identification numbers are: Adaptive3D LLC (3990); Adaptive 3D Technologies, LLC (5893); Beacon Bio, Inc. (9005); Brewer Tafla Dental Technologies, LLC (6452); Dental Arts Laboratories, Inc. (8905); Desktop Labs, Inc. (5344); Desktop Metal Operating, Inc. (7659); Desktop Metal Securities Corporation (9007); Desktop Metal, Inc. (4042); EnvisionTEC US LLC (2483); ExOne Americas LLC (3443); ExOne Operating, LLC (8851); Figur Machine Tools LLC (2489); Larry Brewer Dental Lab Inc. (0215); May Dental Arts, LLC (8558); and The Syzygy Memory Plastics Corp. (8063). The location of the Debtors' corporate headquarters and the Debtors' service address is: 63 Third Avenue, Burlington, MA 01803.

between the Debtors and Anzu Special Acquisition Corp II ("Buyer"), a copy of which is attached hereto as **Exhibit B**, to sell certain of the Debtors' foreign subsidiaries and related U.S. assets to Buyer in a **private sale for $10 million in cash** free and clear of liens, claims, and encumbrances in accordance with the APA (such sale, the "Private Sale Transaction"); and (b) granting related relief, including limiting notice of this Motion such that notice will be provided to all creditors without providing a copy of the Motion itself.  In support of this Motion, the Debtors represent as follows:

## PRELIMINARY STATEMENT

1. As described in the First Day Declarations (as defined below), the Debtors filed these chapter 11 cases to, among other things, effectuate the Private Sale Transaction and sell their remaining available assets with the goal of preserving the Debtors' going concern value, jobs, and vendor relationships and maximizing returns for all constituents. **The Debtors urgently seek approval of the Private Sale Transaction at the first day hearing in these cases because the Debtors have no other funding sources aside from closing the Private Sale Transaction and accessing the proceeds therefrom for the benefit of these estates in order to pursue a comprehensive sale process with respect to the remainder of the Debtors' assets.[2] Moreover, without Court approval of the Private Sale Transaction on or before July 29, 2025, with a closing by July 30, 2025, the Debtors have been informed by their non-Debtor German subsidiaries that the director thereof will have no other choice but immediately to file a German insolvency proceeding. The Debtors expect that their other foreign subsidiaries are likely to file their own insolvency proceedings thereafter, eliminating the $10 million in value for such foreign non-Debtor subsidiaries for the Debtors' estates generated by the Private**

---

[2] The Debtors expect to file a further motion seeking approval of certain bidding and sale procedures with respect to their remaining assets to be considered separately by the Court.

**Sale Transaction. The alternative to approval of the Private Sale Transaction is immediate conversion of these chapter 11 cases to chapter 7 and a hard stop liquidation that will not maximize value.**

2. The total consideration for the Private Sale Transaction is $10 million, plus the dollar equivalent of any excess cash held in the Debtors' foreign subsidiaries, but which is expected to yield $0. Closing of the Private Sale Transaction is expected to occur in two tranches: (a) an initial sale closing of certain assets by no later than July 30, 2025 for $4 million in cash payable by Buyer to the Debtors' estates and then (b) a subsequent sale closing of certain additional assets by no later than August 11, 2025 for $6 million in cash payable by Buyer to the Debtors' estates. The Private Sale Transaction primarily covers the Debtors' equity interests in foreign subsidiaries in Germany, Italy, and Japan, plus certain ancillary assets (such as intellectual property) relating to the business of such foreign subsidiaries that is owned by the Debtors, all as set forth in the APA.

3. The Debtors do not believe that any other bidders exist that would meet or exceed the terms of the Private Sale Transaction under the APA. Before the Petition Date (as defined below), the Debtors engaged Piper, Sandler & Co. ("Piper") as their investment banker in connection with the Debtors' restructuring efforts, including efforts to identify a going concern buyer or buyers and to find a financier willing to fund the restructuring process. This process, which formally started in early June 2025,[3] featured outreach to potential purchasers and financiers and resulted in several rounds of negotiations with multiple bidders. All other bidders have yet to submit a bid for a sale or financing that is actionable from the Debtors' perspective. The Debtors' existing lenders and noteholders also refused to provide any additional financing to the Debtors.

---

[3] Outreach calls on financing began in late April of 2025.

Only Buyer has stepped up with a sale that will maximize the value of the Debtors' foreign subsidiaries under these facts and circumstances and yield immediate cash for these estates. Absent approval of the Private Sale Transaction, the Debtors' foreign subsidiaries will commence insolvency proceedings of their own, which likely will yield no value for the Debtors' estates.

4. After extensive good faith and arms' length negotiations between the Debtors and Buyer, the parties reached agreement on the terms of the APA and the proposed consummation of the Private Sale Transaction as soon as possible. The Buyer has even agreed to take the risk of foreign regulatory approval by closing on the Private Sale Transaction in two tranches one week apart without first obtaining any foreign regulatory approvals.

5. The Debtors, with the assistance of Piper, have extensively marketed their assets and sought financing to fund these chapter 11 cases. Buyer is an independent third party with no prior relationship with the Debtors and is not an insider of the Debtors. The parties have negotiated in good faith and at arms' length and under extreme time constraints in order to formulate the Private Sale Transaction that will preserve the Debtors' going concern business and maximize value for the benefit of all constituents. The Debtors believe that the APA represents the highest and best offer available for the Debtors' acquired foreign subsidiaries and related assets under these facts and circumstances, and the Debtors believe that approval of the APA as a private sale is in the best interests of the Debtors' estates and stakeholders. Accordingly, the Debtors request that the Court grant the relief requested by this Motion on an emergency basis at the first day hearing.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7.      The statutory and legal predicates for the relief sought herein are sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 9007, Rule 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Local Rules"), and the *Procedures for Complex Cases in the Southern District of Texas*, effective as of September 18, 2024 (the "Complex Case Procedures").

## BACKGROUND

A.     **General Case Background**

8.      On the date hereof (the "Petition Date"), the Debtors each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code. The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee has been appointed in these chapter 11 cases.

9.      The Debtors are a pioneer in the additive manufacturing, or 3D printing, business, providing innovative products and services related thereto. The Debtors' innovative technologies have numerous applications in the automotive, healthcare and dental, consumer products, heavy industry, aerospace, machine design, and research and development spaces, among others. The Debtors' operations include the manufacturing and sale of 3D printers and other manufacturing systems, the production and sale of software and consumable materials for use in additive technology processes, metal and industrial polymer manufacturing, and providing sand casting products and services.

10.     Additional information regarding the Debtors' business and capital structure and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Andrew Hinkelman in Support of Chapter 11 Petitions and Private Sale Motion*

(the "Hinkelman Declaration")[4] and the *Declaration of Daniel Gilligan in Support of Private Sale Motion* (the "Gilligan Declaration" and together with the Hinkelman Declaration, the "First Day Declarations"), which will be filed with the Court following the filing hereof.

**B.     The Marketing Process**

11.     As more fully discussed in the First Day Declarations, the Debtors' prepetition marketing process has largely been managed by Piper, which was engaged by the Debtors and non-Debtor subsidiaries in mid-April 2025 to explore strategic alternatives and solutions for the Debtors' balance sheet and liquidity challenges.

12.     In early June 2025, Piper commenced a robust process to sell some or all of the Debtors' assets and to find a financier who could fund the sales process and the Debtors' restructuring efforts either in or out of court. Piper's process identified potential financing partners and potential financial and strategic buyers with the requisite interest and financial wherewithal to consummate a sale transaction or provide adequate financing.

13.     Unfortunately, few parties were interested in acquiring the Debtors' assets, and none offered to provide financing to the Debtors. Even the Debtors' existing lenders and noteholders refused to provide any additional funding to the Debtors. Ultimately, only the proposal from Buyer was actionable. The alternative to the pending Private Sale Transaction is immediate cessation of the Debtors' business operations, termination of employees, and conversion of the chapter 11 cases to chapter 7.  Further, without the proposed sale, the Debtors' foreign subsidiaries are likely to commence insolvency proceedings of their own, which likely would leave no value for these estates.

---

[4]   Capitalized terms used but not defined herein shall have the meanings ascribed to them in the First Day Declarations or the APA, as appropriate.

14. Given the Debtors' urgent need for liquidity and lack of any alternative source of funding, the Debtors and Buyer negotiated the proposed Private Sale Transaction and agreed upon the terms of the APA. All negotiations with Buyer were conducted at arms' length and in good faith. Buyer is not an insider of the Debtors and is not otherwise affiliated with the Debtors. The Debtors are not aware of any other potential buyer or financier willing to purchase the Debtors' assets or offer financing to the Debtors on terms that are anywhere close to those proposed by Buyer in the timeframe required as part of the Private Sale Transaction. For these reasons, the Debtors agreed to move forward with the Private Sale Transaction and to do so as a private sale.

C. **Summary of Material Terms of the APA**

15. The material terms of the APA are summarized in the chart below:[5]

| **MATERIAL TERMS OF THE APA** | |
|---|---|
| **Sellers** | Certain of the Debtors consisting of: Desktop Metal Operating, Inc., Desktop Metal, Inc., ExOne Operating, LLC, and EnvisionTec US LLC. |
| **Buyer** | Anzu Special Acquisition Corp II. |
| **Purchased Equity** | All of the Debtors' equity interests in ExOne GmbH, a German limited liability company, ExOne KK, a Japanese corporation, A.I.D.R.O. Srl, an Italian limited liability company, and EnvisionTec GmbH, a German limited liability company. *See* APA, Recital A. |
| **Purchased Assets** | (i) The Intellectual Property and other assets owned by the applicable Sellers as set forth on Exhibit A to the APA under the heading "July 28 Purchased Assets"; and (ii) the Intellectual Property and other assets owned by the applicable Sellers as set forth on Exhibit A to the APA under the heading "August 8 Purchased Assets." *See* APA § 1.1, Ex. A. |
| **Purchase Price** | Subject to the terms and conditions of the APA: (i) The aggregate consideration to be paid by Buyer to the Sellers for the July 28 Purchased Assets and July 28 Purchased Equity shall be **Four Million Dollars ($4,000,000.00) in cash**. In addition, the July 28 |

---

[5] The following is only a summary of certain of the terms and provisions of the APA. In the event of any conflict between the summary set forth in this Motion and the APA, the terms and provisions of the APA control. All capitalized terms used but not defined in this summary shall have the meanings given to them in the APA.

|  | Purchased Assets owned by ExOne Operating shall be transferred to ExOne Germany in exchange for the cancellation of an account receivable owed by ExOne Operating to ExOne Germany in an amount of approximately **Seven Hundred Twenty-Four Thousand Euros (€724,000)** related to the shipment of certain equipment to ExOne Operating by ExOne Germany, which such account receivable being deemed paid in full upon receipt by ExOne Germany of the July 28 Purchased Assets owned by ExOne Operating. *See* APA § 2.4.<br><br>(ii) The aggregate consideration to be paid by Buyer to the Sellers for the August 8 Purchased Assets and August 8 Purchased Equity shall be **Six Million Dollars ($6,000,000.00) in cash**. *See* APA § 2.5.<br><br>There is provision for the release of Distributable Cash by the applicable foreign subsidiaries to the Debtors, but it is expected that such Distributable Cash will be $0. *See* APA § 2.3. |
|---|---|
| **Closing Deadline** | Subject to the satisfaction of certain closing conditions, the Parties shall consummate the transactions contemplated by the APA with respect to the July 28 Purchased Equity and July 28 Purchased Assets on or before July 28, 2025, with an Outside Date of July 30, 2025, and the August 8 Purchased Equity and August 8 Purchased Assets on or before August 8, 2025, with an Outside Date of August 11, 2025. *See* APA §§ 3.1, 9.1(d). |
| **Representations, Warranties, and Covenants** | Limited in nature, but customary and standard for agreements of this type. *See* APA Art. IV–VI. |
| **Waiver of Intercompany Claims** | Each Seller (a) shall, and shall cause each of its Affiliates to release, cancel, terminate or otherwise settle, in each case, all intercompany accounts among any Acquired Company, on the one hand, and such Seller and its Affiliates, on the other, and (b) shall, and shall cause each of its Affiliates to, not seek to collect or otherwise enforce any such intercompany accounts against any Acquired Company.  From and after the Closings, Buyer shall not, and shall not cause any of its Affiliates to, seek to collect or otherwise enforce any intercompany accounts against any Seller or its Affiliates. *See* APA § 6.2. |
| **Employees** | Buyer may offer employment to certain employees of Sellers. *See* APA § 6.4. |
| **Closing Conditions** | Limited in nature, but customary and standard for agreements of this type.  Notably, foreign regulatory approval of the sale of the Purchased Equity is not a condition to the Buyer closing the sale. *See* APA Art. VIII. |
| **Sale Free and Clear** | Pursuant to section 363(f) of the Bankruptcy Code, all Purchased Assets and Purchased Equity are being sold free and clear of all Encumbrances (other than Permitted Liens and any Encumbrances created by the Buyer or created under applicable securities Laws). *See* APA §§ 4.3-4.4. |

**BASIS FOR RELIEF**

A. **The Consummation of the APA and Sale of the Purchased Assets and Purchased Equity Under the Terms Thereof Free and Clear is a Sound Exercise of the Debtors' Business Judgment**

16. Section 363(b) of the Bankruptcy Code provides, in relevant part, that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). As set forth in Rule 6004(f)(1), sales under 11 U.S.C. § 363(b) can be conducted by "private sale or by public auction."

17. The Bankruptcy Code does not include a statutory standard for determining when the use or sale of property of the estate should be authorized. However, it is well-established in this jurisdiction that a debtor may use or sell property of the estate outside the ordinary course of business under section 363(b) of the Bankruptcy Code if there is a good business reason for doing so. *See, e.g.*, *Black v. Shor (In re BNP Petroleum Corp.)*, 642 F. App'x 429, 435 (5th Cir. 2016) (quoting *Cadle Co. v. Mims (In re Moore)*, 608 F.3d 253, 263 (5th Cir. 2010)) (stating that a sale of a debtor's assets under section 363(b) of the Bankruptcy Code must "be supported by an articulated business justification, good business judgment, or sound business reasons"); *Petfinders LLC v. Sherman (In re Ondova Ltd)*, 620 F. App'x 290, 291 (5th Cir. 2015) (affirming the district court's dismissal of an appeal from the bankruptcy court's sale order, which included a finding that the sale was "an exercise of the Trustee's sound business judgment"); *In re ASARCO, LLC*, 441 B.R. 813, 830 (Bankr. S.D. Tex. 2010) (quoting *In re Continental Air Lines*, 780 F.2d 1223, 1226 (5th Cir. 1986)), *aff'd*, 650 F.3d 593 (5th Cir. 2011)) (noting that, outside of the ordinary course of business, "for the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors, and equity holders, there must be some articulated business justification for using, selling, or leasing the property").

18. To determine whether the business judgment test is satisfied, courts require "a showing that the proposed course of action will be advantageous to the estate." *In re Pisces Energy, LLC*, No. 09-36591-H5-11, 2009 Bankr. LEXIS 4709, at *18 (Bankr. S.D. Tex. Dec. 21, 2009). In the absence of a showing of bad faith or an abuse of business discretion, a debtor's business judgment will not be altered. *See, e.g.*, *NLRB v. Bildisco & Bildisco (In re Bildisco)*, 682 F.2d 72, 79 (3d Cir. 1982), *aff'd*, 465 U.S. 513 (1984); *Lubrizol Enter. v. Richmond Metal Finishers, Inc.*, 756 F.2d 1043, 1047 (4th Cir. 1985). "Great judicial deference is given" to the "exercise of business judgment." *GBL Holding Co. v. Blackburn/Travis/Cole, Ltd. (In re State Park Bldg. Grp.)*, 331 B.R. 251, 254 (Bankr. N.D. Tex. 2005).

19. Here, consummating the APA and selling the applicable Debtors' specified foreign and related assets through the Private Sale Transaction is a reasonable exercise of the Debtors' sound business judgment and is proposed for a legitimate business purpose. The Debtors, in consultation with their professionals, conducted a months-long marketing process searching for potential buyers and funding sources. Aside from the pending Private Sale Transaction, no actionable or otherwise viable sale or financing offers were received by the Debtors for the assets at issue. Not even the Debtors' existing lenders or noteholders offered to provide any further financing to the Debtors. Accordingly, the Debtors and Buyer diligently negotiated the proposed APA under extreme time pressures facing the Debtors. Such negotiations were conducted at arms' length and in good faith. Buyer is not an insider and has no other relationship with the Debtors.

20. Given the lack of any prospect of an overbid for the assets covered by the APA under the circumstances and that time is of the essence, the Debtors submit that proceeding with a private sale, as opposed to a public auction, will generate the highest and best value for the Debtors' estates. *See, e.g.*, *In re 160 Royal Palm*, 600 B.R. 119, 127–30 (S.D. Fla. 2019) (finding

that a private sale was appropriate under section 363 of the Bankruptcy Code when the debtor was "pursuing a 'bird in the hand' approach and [seeking] finality and certainty of the [buyer's] offer . . . . The use of a private sale, to take advantage of the offer made by [buyer], was within the Debtor's business judgment . . . ."). Courts in this and other jurisdictions have authorized private sales pursuant to section 363 of the Bankruptcy Code. *See, e.g.*, *In re Sunnova Energy Int'l Inc.*, No. 25-90160 (ARP) (Bankr. S.D. Tex. June 11, 2025) (authorizing a private sale of certain of the debtors' assets without bidding procedures or an auction on an emergency basis); *In re Kal Freight Inc.*, No. 24-90614 (CML) (Bankr. S.D. Tex. Mar. 31, 2025) (authorizing a private sale of certain of the debtors' assets without bidding procedures or an auction); *In re Envision Healthcare Corp.*, No. 23-90342 (CML) (Bankr. S.D. Tex. Aug. 1, 2023) (same); *In re Katerra Inc.*, No. 21-31861 (DRJ) (Bankr. S.D. Tex. July 8, 2021) (same); *In re Wheel Pros LLC*, No. 24-11939 (Bankr. D. Del. Oct. 15, 2024) (same); *In re MVK FarmCo LLC*, No. 23-11721 (LSS) (Bankr. D. Del. Mar. 11, 2024) (same). If the APA is not approved, the Debtors will have no choice except immediately to cease operations, fire employees, and convert the chapter 11 cases to chapter 7 because the Debtors will not have adequate funding to remain operational in chapter 11. Moreover, absent approval of the Private Sale Transaction, the Debtors' foreign subsidiaries will commence insolvency proceedings of their own, further diminishing the value of the Debtors' estates.

B.  **The Proposed Private Sale Transaction Satisfies the Requirements of Section 363(f) of the Bankruptcy Code**

21.  The Purchased Assets and Purchased Equity should be sold free and clear of any and all liens, claims, interests, and encumbrances in accordance with section 363(f) of the Bankruptcy Code, with any such liens, claims, interests, and encumbrances attaching to the proceeds of the Private Sale Transaction. Section 363(f) of the Bankruptcy Code authorizes a debtor to sell assets free and clear of liens, claims, interests, and encumbrances if any one of the

following conditions is satisfied: "(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest; (2) such entity consents; (3) such interest is a lien at the price at which such property is to be sold is greater than the value of all liens on such property; (4) such interest is in bona fide dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest." 11 U.S.C. § 363(f); *see also In re Nature Leisure Times, LLC*, No. 06-41357, 2007 Bankr. LEXIS 4333, at *7 (Bankr. E.D. Tex. Dec. 19, 2007) ("The language of § 363(f) is in the disjunctive such that a sale free and clear of an interest can be approved if any one of the aforementioned conditions contained in § 363(f) are satisfied."). Satisfaction of any of the requirements enumerated in section 363(f) of the Bankruptcy Code will suffice to warrant the sale of the Purchased Assets and Purchased Equity free and clear of all liens, security interests, pledges, charges, defects, or similar encumbrances (collectively, "Encumbrances"), except with respect to any Encumbrances that may be assumed by Buyer. *See In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002) ("[I]f any of the five conditions are met, the debtor has the authority to conduct the sale free and clear of all liens.").

22. Section 363(f) is supplemented by section 105(a) of the Bankruptcy Code, which provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a); *see also In re Trans World Airlines, Inc.*, No. 01-0056 (PJW), 2001 Bankr. LEXIS 723, at *22 (Bankr. D. Del. Mar. 27, 2001) (finding that injunctive relief granted in a sale order "is appropriate under § 105(a) because it is necessary to carry out the effect and purpose of § 363(f)"); *In re White Motor Credit Corp.*, 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987) ("Authority to conduct such sales [free and clear of claims] is within the court's equitable powers when necessary to carry out the provisions of Title 11.").

23. The Debtors submit that the Private Sale Transaction will satisfy the requirements of section 363(f) of the Bankruptcy Code. All Encumbrances satisfy or will satisfy at least one of the five conditions of section 363(f) of the Bankruptcy Code, and any such Encumbrance will be adequately protected by either being paid in full at the time of closing or by having it attach to the net proceeds of the Private Sale Transaction, subject to any claims and defenses the Debtors may possess with respect thereto. In addition, any party that may hold a lien on all, or a portion of, the Purchased Assets and Purchased Equity will receive notice of, and an opportunity to object to, the Private Sale Transaction. Absent objection, each such party will be deemed to have consented to the sale of the Purchased Assets and Purchased Equity.

24. Accordingly, the Debtors believe that the Private Sale Transaction will satisfy the statutory prerequisites of section 363(f) of the Bankruptcy Code and should be approved free and clear of all Encumbrances.

### C. Buyer Should Be Entitled to the Protections of Section 363(m) of the Bankruptcy Code

25. Pursuant to section 363(m) of the Bankruptcy Code, a good faith purchaser is one who purchases assets for value, in good faith, and without notice of adverse claims. Section 363(m) protects a good faith purchaser's interest in property purchased from a debtor, notwithstanding that the sale under section 363(b) may subsequently be reversed or modified on appeal. Courts in this jurisdiction have recognized that "the purpose of § 363(m)'s stay requirement is in furtherance of the policy of not only affording finality to the judgment of the bankruptcy court, but particularly to give finality to those orders and judgments upon which third parties rely." *In re TMT Procurement Corp.*, 764 F.3d 512, 521 (5th Cir. 2014) (citation and internal quotation marks omitted); *see also In re Gilchrist*, 891 F.2d 559, 560 (5th Cir. 1990) ("Section 363(m) patently

protects, from later modification on appeal, an authorized sale where the purchaser acted in good faith and the sale was not stayed pending appeal.").

26. Although the Bankruptcy Code does not define "good faith," the Fifth Circuit has defined the term in two ways in the context of section 363(m) of the Bankruptcy Code:

> (1) a notice-based definition, wherein a good faith purchaser is one who purchases the assets for value, in good faith, and without notice of adverse claims; and (2) a conduct-based definition, meaning one who does not engage in misconduct including, inter alia, fraud, collusion between the purchaser and other bidders, or an attempt to take grossly unfair advantage of other bidders.

*SR Constr., Inc. v. Hall Palm Springs, L.L.C.*, 65 F.4th 752, 759 (5th Cir. 2023) (internal quotation marks omitted). The Fifth Circuit has further defined the first prong of that definition to state that, "under the notice-definition of a good faith purchaser, the threshold for an 'adverse claim' is a dispute in ownership interest." *Id.* at 761. With respect to the second prong, a party would have to show "misconduct including fraud, collusion between the purchaser and other bidders, or an attempt to take grossly unfair advantage of other bidders[, which] could destroy a purchaser's good faith status." *Id.* at 762 (internal quotation marks omitted) (quoting *In re Bleaufontaine, Inc.*, 634 F.2d 1383, 1388 n.7 (5th Cir. 1981)).

27. The Debtors submit that Buyer is a "good faith purchaser" within the meaning of section 363(m) of the Bankruptcy Code. The Debtors and Buyer have entered into the APA without notice of adverse claims or misconduct such as fraud or collusion. Rather, the Debtors and Buyer have entered into APA in good faith and through extensive arm's-length negotiations. Indeed, Buyer and the Debtors have engaged separate counsel and other professional advisors to represent their respective interests in the negotiation of the APA and in the sale process generally. Buyer is not an insider of the Debtors and has no prior relationship to the Debtors. To the best of the

Debtors' knowledge, information, and belief, no party has engaged in any conduct that would cause or permit the APA to be set aside under section 363(m) of the Bankruptcy Code.

28.     Accordingly, the Debtors seek a finding that Buyer is a good faith purchaser and is entitled to the full protections afforded by section 363(m) of the Bankruptcy Code. The Debtors also submit that the proposed APA and the Private Sale Transaction should be approved as a good faith transaction.

## EMERGENCY CONSIDERATION

29.     The Debtors request emergency consideration of this Motion by no later than **July 29, 2025** pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first 21 days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm," and Local Rule 9013-1(i). An immediate and orderly transition into chapter 11 is critical to the viability of the Debtors' operations. Failure to receive the requested relief during the first 21 days of these chapter 11 cases would imperil the Debtors' restructuring and cause irreparable harm. As set forth above and in the First Day Declarations, the Debtors are already at a pivotal stage in these nascent chapter 11 cases. As described above, the Private Sale Transaction will not only generate proceeds which would allow the Debtors the runway to pursue a value-maximizing sale of their remaining assets, but also will prevent the loss of $10 million in value that is likely to occur if the Debtors' German and other foreign subsidiaries determine to file insolvency proceedings of their own. Accordingly, the Debtors have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and request emergency consideration of the Private Sale Transaction at the first day hearing.

## WAIVER OF BANKRUPTCY RULES 6004(a) and 6004(h)

30.     The Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to

exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).  The Debtors also request to limit notice such that only notice of the Motion is provided to all creditors rather than the Motion itself.

### **NO PRIOR REQUEST**

31. No prior request for the relief sought herein has been made to this Court or any other court.

### **NOTICE**

32. Notice of the hearing on the relief requested in this Motion will be provided by the Debtors, in the form attached hereto as **Exhibit C**, in accordance and compliance with Bankruptcy Rules and Local Rules. The Debtors will provide notice of this motion to the following: (a) the U.S. Trustee for the Southern District of Texas; (b) all creditors of the Debtors set forth on the creditor matrix; (c) the parties holding secured claims against the Debtors; (d) the United States Attorney's Office for the Southern District of Texas; (e) the Internal Revenue Service; (f) the United States Securities and Exchange Commission; (g) the state attorneys general for states in which the Debtors conduct business; (h) governmental agencies having a regulatory or statutory interest in these cases; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002 and Local Rule 9013-1(d). As stated above, the Debtors intend to only provide notice of this Motion to all creditors and not copies of the Motion itself.  No other or further notice is needed in light of the nature of the relief requested.

*[Remainder of Page Intentionally Left Blank]*

**WHEREFORE**, the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and granting such other relief as is just and proper.

Dated: July 28, 2025

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Benjamin L. Wallen*
Michael D. Warner (SBT 00792304)
Maxim B. Litvak (SBT 24002482)
Benjamin L. Wallen (SBT 24102623)
700 Louisiana Street, Suite 4500
Houston, TX 77002
Telephone: (713) 691-9385
Facsimile: (713) 691-9407
mwarner@pszjlaw.com
mlitvak@pszjlaw.com
bwallen@pszjlaw.com

-and-

Richard M. Pachulski (*pro hac vice* pending)
Gregory V. Demo (*pro hac vice* forthcoming)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
rpachulski@pszjlaw.com
gdemo@pszjlaw.com

*Proposed Counsel to the Debtors and Debtors in Possession*

## CERTIFICATE OF SERVICE

I certify that on July 28, 2025, I caused a copy of the foregoing document to be served via the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Benjamin L. Wallen*
Benjamin L. Wallen