IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| DESKTOP METAL, INC., *et al.*,[1] | ) Case No. 25-90268 (CML) |
| Debtors. | ) (Jointly Administered) |

**NANO DIMENSION'S OBJECTION TO CONFIRMATION
OF THE FIRST AMENDED AND RESTATED COMBINED DISCLOSURE
STATEMENT AND PLAN OF LIQUIDATION OF DESKTOP METAL, INC. AND
ITS AFFILIATED DEBTORS UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

[Related to Docket No. 212]

Nano Dimension USA, Inc. ("Nano") submits this objection (this "Objection") to confirmation of the *First Amended and Restated Combined Disclosure Statement and Plan of Liquidation of Desktop Metal, Inc. and its Affiliated Debtors Under Chapter 11 of the Bankruptcy Code* [Docket No. 212] (as amended, amended and restated, modified, or supplemented from time to time, the "Plan")[2] in its capacity as a Holder of Secured Claims in Class 4 (Nano Claims) and respectfully states as follows:

---

[1] The Debtors in these chapter 11 cases and the last four digits of their respective federal tax identification numbers are: Adaptive3D LLC (3990); Adaptive 3D Technologies, LLC (5893); Beacon Bio, Inc. (9005); Brewer Tafla Dental Technologies, LLC (6452); Dental Arts Laboratories, Inc. (8905); Desktop Labs, Inc. (5344); Desktop Metal Operating, Inc. (7659); Desktop Metal Securities Corporation (9007); Desktop Metal, Inc. (4042); EnvisionTEC US LLC (2483); ExOne Americas LLC (3443); ExOne Operating, LLC (8851); Figur Machine Tools LLC (2489); Larry Brewer Dental Lab Inc. (0215); May Dental Arts, LLC (8558); and The Syzygy Memory Plastics Corp. (8063). The location of the Debtors' corporate headquarters and the Debtors' service address is: 63 Third Avenue, Burlington, MA 01803.

[2] Capitalized terms used but not defined in this Objection shall have the meanings ascribed to such terms in the Plan.

**Preliminary Statement**[3]

1. From the outset, Nano has provided essential support for these Chapter 11 Cases. By consenting to the Debtors' use of its Cash Collateral securing the prepetition loan that Nano advanced to the Debtors under the Nano Secured Notes in an aggregate principal amount of $12 million, Nano has enabled the Debtors to continue to operate as a going concern, save the jobs of approximately 800 employees, and fund millions of dollars of payroll and employee obligations, supplier payments, and professional fees. In return, the Debtors granted Nano various forms of adequate protection under the terms of the Interim Cash Collateral Order, including allowed administrative claims against the Debtors to the extent of the Diminution of Value of Nano's interests in its Collateral, including its Cash Collateral, resulting from the Debtors' use, sale, or lease of the Collateral (the "<u>Allowed Adequate Protection Claims</u>"). The Plan, however, plainly violates Nano's rights as a Holder of such Allowed Adequate Protection Claims and fails to satisfy the requirements for confirmation for at least three reasons.

2. First, pursuant to section 1129(a)(9)(A) of the Bankruptcy Code, Nano is entitled to payment in cash in full of its Allowed Adequate Protection Claims—which, as detailed below, are substantial in amount, equaling the entirety of the approximately $13 million Nano Claims—on the Effective Date. Given that the Debtors project that they will have less than $900,000 of cash on hand as of the Effective Date, the Debtors clearly lack the requisite funds to satisfy Nano's Allowed Adequate Protection Claims as required by section 1129(a)(9)(A), and thus the Plan fails to satisfy both the requirement set forth in section 1129(a)(9)(A) and the feasibility requirement set forth in section 1129(a)(11).

---

[3] Capitalized terms used but not defined in this Preliminary Statement shall have the meanings ascribed to such terms in the remainder of this Objection.

2

3. Second, Nano does not consent, and hereby objects, to the use of its Cash Collateral on and after the Effective Date on the terms set forth in the Plan. As proposed, the Plan vests Nano's Cash Collateral in the Administration Trust and permits the Plan Administrator to use and reserve Nano's Cash Collateral with exceedingly limited guardrails and apparently without the need to ever make distributions to Nano, even from the proceeds of its own Collateral to which Nano has the senior-most claim. Thus, the Court should also deny confirmation because the Debtors have not demonstrated—and cannot demonstrate—that Nano's interests in its Cash Collateral are adequately protected, as required under section 363(e) of the Bankruptcy Code.

4. Third, for these and other reasons, Nano, as the sole holder of Nano Claims in Class 4, intends to vote to reject the Plan as proposed. Because the Plan fails to provide any certainty as to whether *any* distributions will *ever* be made to Nano on account of the Nano Claims—despite the fact that Nano's interests in its Collateral will undeniably have value as of the Effective Date—the Plan's proposed treatment of the Nano Claims fails to satisfy the requirement set forth in section 1129(b)(2)(A)(i)(II).

5. For these reasons and as set forth in further detail below, the Court should deny confirmation of the Plan.

## Objection

I. **The Plan Fails to Provide for the Payment of Nano's Allowed Adequate Protection Claims as Required by Section 1129(a)(9)(A) and Is Not Feasible Under Section 1129(a)(11) Because the Debtors Lack the Ability to Pay Such Claims as Required**

6. Under section 1129(a)(9)(A) of the Bankruptcy Code, for a plan to be confirmable, the plan must "provide[] that . . . with respect to a claim of a kind specified in section 507(a)(2) or 507(a)(3) of this title, on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim." Pursuant to the *Second Interim Order (A) Authorizing the Use of Cash Collateral, (B) Providing Adequate*

*Protection, (C) Modifying the Automatic Stay, and (D) Scheduling a Final Hearing* [Docket No. 210] (the "Interim Cash Collateral Order"), Nano is entitled to, "solely to the extent of any Diminution in Value, to the extent provided by section 507(b) of the Bankruptcy Code, an ***allowed*** administrative claim against the applicable Debtors."[4] Thus, to the extent of any Diminution in Value (as defined in the Interim Cash Collateral Order), Nano has Allowed Adequate Protection Claims, and for the Court to confirm the Plan, the Court must find that the Plan's treatment of Allowed Adequate Protection Claims satisfies the requirements of section 1129(a)(9)(A). *See, e.g.*, *In re TK Holdings Inc.*, No. 17-11375 (BLS), 2018 WL 1306271, at *12 (Bankr. D. Del. Mar. 13, 2018) (finding that, in connection with confirmation, a plan's treatment of adequate protection claims satisfied section 1129(a)(9)(A) of the Bankruptcy Code).

7. Additionally, for the Court to confirm the Plan, the Court must find that the Plan satisfies the feasibility requirement set forth in section 1129(a)(11) of the Bankruptcy Code. In the context of a liquidating plan, "feasibility is established when the liquidation itself is feasible." *In re Robertshaw US Holding Corp.*, 662 B.R. 300, 321 (Bankr. S.D. Tex. 2024) (citing *In re Heritage Org., L.L.C.*, 375 B.R. 230, 311 (Bankr. N.D. Tex. 2007)). Accordingly, for the Plan to satisfy 1129(a)(11), "there [must] be sufficient funds to pay administrative and priority creditors" and "the successful performance of its terms [must] not be dependent or contingent upon any future, uncertain event." *Heritage*, 375 B.R. at 311; *accord In re SMBC Healthcare, LLC*, No. 12-33299, 2013 WL 12579583, at *6 (Bankr. S.D. Tex. Mar. 5, 2013) (finding that a liquidating plan satisfied the feasibility requirement of section 1129(a)(11) because "[a] reserve for applicable Plan payments ha[d] been established to satisfy obligations owed under the Plan"

---

[4] Interim Cash Collateral Order, ¶ 7(a)(iii) (emphasis added).

and "the Liquidating Trustee w[ould] be able to timely perform all obligations described in the Plan").

8. The value of Nano's interests in in the collateral securing the Nano Secured Note, including Nano's cash collateral (the "Cash Collateral" and, together with all other collateral securing the Nano Secured Note, collectively, the "Collateral"), has undeniably been diminished during these Chapter 11 Cases through the Debtors' use of Nano's Cash Collateral. Specifically:

- the Debtors' commenced these Chapter 11 Cases with approximately $2.6 million of cash on hand,[5] all of which constituted Nano's Cash Collateral; and

- the Debtors' *only* sources of incremental cash during these Chapter 11 Cases have been (a) collections of accounts receivable totaling approximately $3.8 million, which constitute Nano's Cash Collateral,[6] or (b) the proceeds of the sales of Nano's Collateral itself, which totaled approximately $25 million in the aggregate and constitute Nano's Cash Collateral; but

- the Debtors' project that they will have less than $900,000 of cash on hand as of September 12, 2025.[7]

Accordingly, net of the Debtors' payment in full in cash of the First Lien AHG Claims in an aggregate amount of approximately $14 million, as of the Effective Date, the Debtors will have used approximately $16.5 million of cash that constituted Nano's Cash Collateral during these Chapter 11 Cases, but the value of Nano's interests in its Cash Collateral is projected to be less than $900,000. Thus, Nano has _substantial_ Allowed Adequate Protection Claims equaling the full amount of the approximately $13 million (inclusive of fees, interest, and expenses) of Nano Claims

---

[5] *See Interim Order (A) Authorizing the Use of Cash Collateral, (B) Providing Adequate Protection, (C) Modifying the Automatic Stay, and (D) Scheduling a Final Hearing* [Docket No. 117] (the "First Interim Cash Collateral Order") at 12.

[6] *See id.*; Interim Cash Collateral Order at 14.

[7] *See* Interim Cash Collateral Order at 14.

arising from the Nano Secured Notes,[8] which the Interim Cash Collateral Order specifically provides are "***allowed*** administrative claim[s],"[9] which far exceed the amount of cash that Debtors project to have on hand as of the Effective Date.[10]

9. Thus, the Debtors do not have sufficient cash to pay Nano's substantial Allowed Adequate Protection Claims in full in cash on the Effective Date, as required by section 1129(a)(9)(A). Put another way, the Plan cannot possibly satisfy the requirement set forth in section 1129(a)(9)(A) because the Debtors cannot—as a practical matter—make the payments required by that subsection.

10. Further, because the Debtors lack the ability to pay Nano's Allowed Adequate Protection Claims in cash in full on the Effective Date as required by section 1129(a)(9)(A), the Plan is not feasible under section 1129(a)(11): the Debtors lack "sufficient funds to pay administrative and priority creditors," and the Debtors' ability to pay such claims is "dependent or contingent upon a[] future, uncertain event," namely, the success of contingent litigation claims that may be pursued at some point in the future by the Litigation Trust. *Heritage*, 375 B.R. at 311.

11. Accordingly, the Plan fails to satisfy the requirements of 1129(a)(9)(A) and 1129(a)(11) and, therefore, cannot be confirmed.

---

[8] Payment of Nano's Allowed Adequate Protection Claims would reduce, on a dollar-for-dollar basis, any amounts owed to Nano on account of its Nano Claims in Class 4

[9] *Id.*, ¶ 7(a)(iii) (emphasis added).

[10] Given that the First Lien AHG Claims will be paid in cash in full as of the Effective Date, Nano's Allowed Adequate Protection Claims are entitled to recover ahead of any other Claims, and the Plan fails to account for the priority of Nano's Allowed Adequate Protection Claims.

**II.     Nano Does Not Consent to the Use of Its Cash Collateral On and After the Effective Date as Set Forth in the Plan**

12.     Section 363(e) provides that, "at any time, on request of an entity that has an interest in property used . . . or proposed to be used . . . by the trustee, the court, with or without a hearing, shall prohibit or condition such use . . . as is necessary to provide adequate protection of such interest." Section 363(e)'s requirement that secured parties be provided adequate protection in connection with the use or proposed use of their collateral is <u>*mandatory*</u>. *Metromedia Fiber Network Servs. v. Lexent, Inc. (In re Metromedia Fiber Network, Inc.)*, 290 B.R. 487, 491 (Bankr. S.D.N.Y. 2003) ("Section 363(e) is not permissive or discretionary—it states that the court 'shall' grant the relief specified, at any time, on request of the secured entity.").

13.     Pursuant to the Plan, on the Effective Date, all Available Cash—Nano's Cash Collateral—will vest in the Administration Trust, and the Administration Trust will use Nano's Cash Collateral to "(a) administer[] the Administration Trust Assets, (b) prosecut[e] and/or resolv[e] all Disputed Claims, (c) determine[e] the validity and priority of any Lien on Collateral; (d) investigat[e] and pursu[e] any Causes of Action that constitute Administration Trust Assets; and (e) mak[e] all Distributions to the Beneficiaries provided for under the Plan."[11] Additionally, "[t]he Administration Trust will fund the Litigation Trust with a portion of the Administration Trust Assets"[12]—again, Nano's Cash Collateral. Per its terms, "the Plan shall be considered a motion pursuant to Section[] 363 . . . of the Bankruptcy Code" with respect to its proposed use of

---

[11]    Plan, § XIV.C.

[12]    *Id.*, § XIV.D.

Nano's Cash Collateral,[13] given that the Debtors' authorization to use Cash Collateral under the Interim Cash Collateral Order will terminate as of the Effective Date.[14]

14. Nano does not consent to the use of its Cash Collateral as proposed in the Plan, and the Plan fails to provide Nano with any adequate protection whatsoever in consideration for the proposed use of Nano's Cash Collateral. Indeed, limited only by the Plan Administrator's "good faith" and "reasonableness," the Plan Administrator may freely use and reserve Nano's Cash Collateral, and nothing in the Administration Trust Agreement requires the Plan Administrator to make *any* distributions to Nano, even from the proceeds of its Collateral to which Nano would otherwise be entitled: the Plan Administrator may simply withhold distributions "pending" the Plan Administrator's "determination of whether to object to a Disputed Claim or commence a Cause of Action regarding the validity, priority, and extent of any purported Lien," *without any timeframe* to make such determination,[15] and the Plan Administrator is prohibited from making distributions if the Administration Trust does not have an *unspecified amount* of "reasonable reserves."[16]

15. The Debtors have not shown—and, under the circumstances, *cannot* show—that Nano's interests in its Cash Collateral are adequately protected. Thus the Court should deny confirmation of the Plan, the very consummation of which depends on Nano's Cash Collateral vesting in the Administration Trust. *See Metromedia*, 290 B.R. at 491 (ruling that section 363(e)'s requirement that a court "prohibit or condition" the use or proposed use of collateral "is not permissive or discretionary," but rather mandatory).

---

[13] *Id.*, § XIV.C.

[14] Interim Cash Collateral Order, ¶ 5.

[15] *Administration Trust Agreement* [Docket No. 242, Ex. A] (the "Administration Trust Agreement"), §§ III.1.

[16] *Id.*, § III.4.

8

**III. The Plan's Treatment of the Nano Claims Does Not Satisfy the Cramdown Requirement Set Forth in Section 1129(b)(2)(A)(i)(II)**

16. If a class of secured claims votes to reject a plan, the plan may nevertheless be confirmed "if the plan does not discriminate unfairly, and is fair and equitable with respect to [su]ch class of claims." 11 U.S.C. § 1129(b)(1). For a plan to be "fair and equitable with respect to . . . a class of secured claims, the plan [must] provide[] . . . (I) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; *and* (II) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property." *Id.* § 1129(b)(2)(A)(i).[17]

17. Nano, as the sole holder of Nano Claims in Class 4, intends to vote to reject the Plan as proposed. Thus, to be confirmable, the Plan must satisfy the cramdown requirements of section 1129(b)(1), including the "fair and equitable" requirements set forth in section 1129(b)(2)(A). While the Plan provides that Nano "will retain any valid and enforceable existing lien, claim, or encumbrance in or on its Collateral" on account of the Nano Claims,[18] thereby satisfying section 1129(b)(2)(A)(i)(I), the Plan fails to provide Nano with "deferred cash payments totaling at least the allowed amount of [the Nano C]laim[s], of a value, as of the effective date of the plan, of at least the value of [Nano]'s interest in the estate's interest in such [Collateral]" and, therefore, fails to satisfy section 1129(b)(2)(A)(i)(II).

---

[17] To satisfy the "fair and equitable" requirement with respect to a class of secured claims, a plan may also provide for the treatment of such claims as set forth in section 1129(b)(2)(A)(ii) or (iii), but these clauses are inapplicable to the Plan's proposed treatment of the Nano Claims.

[18] Plan, § X.D.

9

18. As detailed above, nothing in the Plan or the Administration Trust Agreement requires the Plan Administrator to make distributions to Nano *at all*, even if the Plan Administrator realizes proceeds from Nano's Collateral and Nano has the senior-most claim to such proceeds: the Plan Administrator is empowered to withhold distributions to Nano for an unspecified period of time and retain the proceeds of Nano's Collateral to establish reserves for the benefit of the Administration Trust's professionals in an unspecified amount.[19] Far short of the "deferred cash payments" required by section 1129(b)(2)(A)(i)(II), the Plan does not provide for *any* payments to Nano with any level of certainty whatsoever. The Plan's and the Administration Trust Agreement's murkiness with respect to *whether*, *if ever*, Nano will receive a distribution on account of the Nano Claims—despite the fact that, on the Effective Date, the Administration Trust will be holding proceeds of Nano's Collateral, and Nano will have the senior-most claim to such proceeds—cannot possibly satisfy the requirement set forth in section 1129(b)(2)(A)(i)(II). Accordingly, the Plan cannot be crammed down on Class 4 and cannot be confirmed.

## Conclusion

19. For the reasons set forth herein, Nano respectfully submits that the Court should deny confirmation of the Plan.

---

[19] Administration Trust Agreement, §§ III.1, .4.

| | |
|---|---|
| September 5, 2025 | Respectfully submitted,<br><br>By: */s/ John F. Higgins*<br>**PORTER HEDGES LLP**<br>John F. Higgins (TX Bar No. 09597500)<br>M. Shane Johnson (TX Bar No. 24083263)<br>Megan Young-John (TX Bar No. 24088700)<br>Jordan T. Stevens (TX Bar No. 24106467)<br>1000 Main St., 36th Floor<br>Houston, Texas 77002<br>Telephone: (713) 226-6000<br>Facsimile: (713) 226-6248<br>jhiggins@porterhedges.com<br>sjohnson@porterhedges.com<br>myoung-john@porterhedges.com<br>jstevens@ porterhedges.com<br><br>- and -<br><br>**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**<br>Kenneth S. Ziman (admitted *pro hac vice*)<br>Lewis R. Clayton (admitted *pro hac vice*)<br>Jeffrey J. Recher (admitted *pro hac vice*)<br>Kyle R. Satterfield (admitted *pro hac vice*)<br>1285 Avenue of the Americas<br>New York, New York 10019<br>Telephone: (212) 373-3000<br>Facsimile: (212) 757-3990<br>kziman@paulweiss.com<br>lclayton@paulweiss.com<br>jrecher@paulweiss.com<br>ksatterfield@paulweiss.com<br><br>*Counsel to Nano Dimension Ltd.*<br>*and certain of its subsidiaries* |

**Certificate of Service**

  I certify that on September 5, 2025, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                 */s/ John F. Higgins*
                 John F. Higgins