# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| DESKTOP METAL, INC., *et al.*, | Case No. 25-90268 (CML) |
| Debtors.[1] | (Jointly Administered) |

**DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN ORDER (I) APPROVING ASSET MARKETING AGREEMENT WITH ARC IMPACT ACQUISITION CORP.; (II) AUTHORIZING THE SALE OF INVENTORY FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES; AND (III) GRANTING RELATED RELIEF**

> **Emergency relief has been requested. Relief is requested not later than September 25, 2025.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on September 25, 2025, at 10:00 a.m. (prevailing Central Time) in Courtroom 401, 4th Floor, 515 Rusk Street, Houston, Texas 77002. You may participate in the hearing either in person or by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. Once connected, you will be asked to enter the conference room number. Judge Lopez's conference room number is 590153. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Lopez's homepage. The meeting code is "JudgeLopez". Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Lopez's homepage. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

---

[1] The Debtors in these chapter 11 cases and the last four digits of their respective federal tax identification numbers are: Adaptive3D LLC (3990); Adaptive 3D Technologies, LLC (5893); Beacon Bio, Inc. (9005); Brewer Tafla Dental Technologies, LLC (6452); Dental Arts Laboratories, Inc. (8905); Desktop Labs, Inc. (5344); Desktop Metal Operating, Inc. (7659); Desktop Metal Securities Corporation (9007); Desktop Metal, Inc. (4042); EnvisionTEC US LLC (2483); ExOne Americas LLC (3443); ExOne Operating, LLC (8851); Figur Machine Tools LLC (2489); Larry Brewer Dental Lab Inc. (0215); May Dental Arts, LLC (8558); and The Syzygy Memory Plastics Corp. (8063). The location of the Debtors' corporate headquarters and the Debtors' service address is: 63 Third Avenue, Burlington, MA 01803.

The above-captioned debtors and debtors in possession (the "Debtors") respectfully move (the "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), (i) approving the Asset Marketing Agreement attached to the Order as Exhibit 1 (the "Agreement") with Arc Impact Acquisition Corp. ("Arc"); (ii) authorizing and approving the sale of the Debtors' Inventory (as defined in the Agreement) free and clear of liens, claims, interests, and encumbrances; and (iii) granting related relief.  In support of this Motion, the Debtors respectfully state as follows:

**Jurisdiction and Venue**

1. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). The Debtors confirm their consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are sections 105, 327, 328 and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rules 2002, 2014 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), rule 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Local Rules"), and section G of the *Procedures for Complex Cases in the Southern District of Texas* (the "Complex Case Procedures").[2]

---

[2] On December 6, 2024, the Court entered the *Order Granting Complex Case Treatment* [Docket No. 29], applying the Complex Case Procedures to these Chapter 11 Cases.

**Background**

4. On July 28, 2025 (the "Petition Date"), the Debtors each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code. The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these chapter 11 cases.

5. On August 6, 2025, the Office of the United States Trustee (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Committee"). *See* Docket No. 126.

6. The Debtors were a pioneer in the additive manufacturing, or 3D printing, business, providing innovative products and services related thereto. The Debtors' innovative technologies have numerous applications in the automotive, healthcare and dental, consumer products, heavy industry, aerospace, machine design, and research and development spaces, among others. The Debtors' prepetition operations included the manufacturing and sale of 3D printers and other manufacturing systems, the production and sale of software and consumable materials for use in additive technology processes, metal and industrial polymer manufacturing, and providing sand casting products and services.

7. Additional information regarding the Debtors' business and capital structure and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Andrew Hinkelman in Support of Chapter 11 Petitions and Private Sale Motion* [Docket No. 16] and the *Declaration of Chas Harvick in Support of First Day Motions* [Docket No. 72] (together, the "First Day Declarations"), incorporated by reference herein.

8. As the First Day Declarations and subsequent proceedings in these cases have demonstrated, the Debtors filed these chapter 11 cases to pursue an orderly and

value-maximizing sale or sales of their assets followed by confirmation of a plan of liquidation. The Court has entered several orders approving sales of the Debtors' operating assets and foreign subsidiaries, including a sale of certain assets to Arc. *See* Docket Nos. 81, 83, 175-177, 252, 253.

9. Notwithstanding the foregoing sales, certain Inventory remains in the Debtors' estates, which the Debtors now propose to sell utilizing the expertise that Arc has acquired through its prior purchase of certain of the Debtors' assets and assumption of certain leases of nonresidential real estate where the Inventory is currently located. The Debtors also propose to utilize Arc to collect on certain Receivables (as defined below).

## The Proposed Agreement

10. The Debtors have decided in a sound exercise of their business judgment to conduct an efficient and cost-effective liquidation of the Inventory and collection of the Receivables with the assistance of Arc. The Debtors submit that the relief requested herein will best position the estates to maximize the value of the remaining Inventory and Receivables.

11. A summary of the material terms of the proposed Agreement is set forth below:[3]

| Term | Asset Marketing Agreement |
|---|---|
| **Services** | The Debtors will engage Arc as their marketing and sales agent with respect to (but not limited to) the Inventory identified in the Agreement located at Arc's and other facilities identified in the Agreement. |
| | For purposes of selling the Inventory, Arc shall exercise commercially reasonable efforts to sell the Inventory in the ordinary course of business for the highest possible value. Arc shall provide reasonable advance notice to, and obtain the consent of, the Company if (i) in a transaction involving a single asset, the sale price of such single asset is below twenty percent (20%) of its cost value, or (ii) in |

---

[3] This summary is provided for convenience purposes only. To the extent any of the terms described below are inconsistent with the Agreement, the terms of the Agreement shall control in all respects.

4912-6423-4600.4 18041.00002

|  | |
|---|---|
|  | a transaction involving multiple assets, the aggregate sale price is below twenty percent (20%) of the aggregate cost value of such assets.<br><br>The Company also engages Arc to collect accounts receivable of the Company that exist as of the Commencement Date, as may be requested by the Company (the "Receivables"). For the avoidance of doubt, the Receivables shall not include any accounts receivable associated with the sale of the Inventory. |
| **Term of Agreement** | In order to permit successful marketing and sale of the Inventory and collection of Receivables, the Company grants to Arc the right to sell the Inventory and collect the Receivables for a period beginning on September 17, 2025 (the "Commencement Date") and continuing until the earlier of (a) December 31, 2025 and (b) the date on which the Inventory has been substantially sold and the Receivables collected or reasonably determined to be substantially uncollectible (such period, the "Term"), which term may be extended by mutual agreement of the Parties. To the extent any Inventory remains unsold at the end of the Term, Arc shall coordinate with the Company on the disposal of such Inventory and the Company shall bear the expense of such disposal. |
| **Compensation; Rent Reimbursement and Other Expenses** | In consideration of the services under the Agreement, Arc shall be entitled to payment by the Debtors of a commission equal to (a) twenty percent (20%) of the Gross Proceeds from the sale of the Inventory (except for the Bulk Sales) and (b) fifteen percent (15%) of the Gross Proceeds from the sale of the Inventory in the form of a Bulk Sale. "Gross Proceeds" shall be defined as the aggregate cash consideration received by Arc in consideration of any item of Inventory. A "Bulk Sale" is a sale of the Inventory in excess of $100,000 that is negotiated and documented by the Debtors. Arc also will be entitled to a commission equal to twenty percent (20%) of the proceeds of the Receivables collected by the Company.<br><br>Within five (5) business days after the Commencement Date, the Debtors shall pay rent and related obligations for the Locations in Massachusetts and Texas through September 30, 2025, and Arc shall pay the rent and related obligations for such Locations thereafter. Within five (5) business days after the Commencement Date, Arc shall reimburse the Debtors for rent and related obligations that the Company paid for the Locations in Pennsylvania and Taiwan for the period from September 1, 2025 through September 5, 2025.<br><br>The Debtors (or any successor thereto) shall maintain a bank account for the collection of accounts receivable that have been purchased by Arc through at least December 31, 2025, and shall promptly turnover |

5

|  | to Arc any collections of accounts receivable that belong to Arc. |
|---|---|
|  | All commissions, fees, and other amounts due and payable to Arc under the Agreement in connection with Arc's performance of its Inventory-related services shall be paid to Arc at the closing of the applicable sale transaction and the remaining proceeds shall be promptly paid by Arc to the Company. All commissions, fees, and other amounts due and payable to Arc under the Agreement in connection with Arc's performance of its Receivables-related services shall be promptly paid to Arc by the Company. |

## Basis for Relief

12.     The Debtors believe that approval of the Agreement with Arc and Arc's sale (on the Debtors' behalf) of the Inventory, and collection of the Receivables, free and clear of liens, interests, and encumbrances (effective upon the sale thereof) is in the best interests of the Debtors, their creditors, and their estates.

**I.     Entry into the Agreement for Arc's Marketing and Selling of the Inventory, and Collection of the Receivables, Reflects a Sound Exercise of the Debtors' Business Judgment.**

13.     Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). This Court's power under section 363 is supplemented by section 105(a), which provides in relevant part that "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title . . . ." 11 U.S.C. § 105(a).

14.     The Bankruptcy Code does not include a statutory standard for determining when the use or sale of property of the estate should be authorized. However, it is well-established in this jurisdiction that a debtor may use or sell property of the estate outside the ordinary course of business under section 363(b) of the Bankruptcy Code if there is a good business reason for doing so. *See, e.g.*, *Black v. Shor (In re BNP Petroleum Corp.)*, 642 F. App'x

4912-6423-4600.4 18041.00002

429, 435 (5th Cir. 2016) (quoting *Cadle Co. v. Mims (In re Moore)*, 608 F.3d 253, 263 (5th Cir. 2010)) (stating that a sale of a debtor's assets under section 363(b) of the Bankruptcy Code must "be supported by an articulated business justification, good business judgment, or sound business reasons"); *Petfinders LLC v. Sherman (In re Ondova Ltd)*, 620 F. App'x 290, 291 (5th Cir. 2015) (affirming the district court's dismissal of an appeal from the bankruptcy court's sale order, which included a finding that the sale was "an exercise of the Trustee's sound business judgment"); *In re ASARCO, LLC*, 441 B.R. 813, 830 (Bankr. S.D. Tex. 2010) (quoting *In re Continental Air Lines*, 780 F.2d 1223, 1226 (5th Cir. 1986)), *aff'd*, 650 F.3d 593 (5th Cir. 2011)) (noting that, outside of the ordinary course of business, "for the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors, and equity holders, there must be some articulated business justification for using, selling, or leasing the property").

15. To determine whether the business judgment test is satisfied, courts require "a showing that the proposed course of action will be advantageous to the estate." *In re Pisces Energy, LLC*, No. 09-36591-H5-11, 2009 Bankr. LEXIS 4709, at *18 (Bankr. S.D. Tex. Dec. 21, 2009). In the absence of a showing of bad faith or an abuse of business discretion, a debtor's business judgment will not be altered. *See, e.g.*, *NLRB v. Bildisco & Bildisco (In re Bildisco)*, 682 F.2d 72, 79 (3d Cir. 1982), *aff'd*, 465 U.S. 513 (1984); *Lubrizol Enter. v. Richmond Metal Finishers, Inc.*, 756 F.2d 1043, 1047 (4th Cir. 1985). "Great judicial deference is given" to the "exercise of business judgment." *GBL Holding Co. v. Blackburn/Travis/Cole, Ltd. (In re State Park Bldg. Grp.)*, 331 B.R. 251, 254 (Bankr. N.D. Tex. 2005).

16. Here, the Debtors submit that Arc's marketing and selling the Inventory, and collection of the Receivables, on the Debtors' behalf pursuant to the Agreement is an exercise of sound business judgment. With the purchase of certain of the Debtors' business assets, Arc now

possesses the ability to maximize the amounts realized from the sales of the Inventory and collection of the Receivables. Thus, Arc is well positioned to execute its obligations under the Agreement and to assist the Debtors in maximizing the value of the Inventory and the Receivables. Moreover, any attempt by the Debtors to liquidate the Inventory and collect the Receivables would require the Debtors to significantly increase their existing operational capabilities and personnel.

17. Accordingly, the Debtors believe that the entry into the Agreement with Arc will provide the best method for selling the Inventory, and collecting the Receivables, in a manner that will maximize creditor recoveries. The Debtors respectfully submit that they have satisfied the requirements of sections 105 and 363 and that the sale of the Inventory and collection of the Receivables by Arc meets the standard set forth in section 363(b) for sales outside of the ordinary course of a debtor's business.

## II. The Court Should Authorize Entry into the Agreement Effective as of September 17, 2025.

18. The Debtors request approval of the Agreement with Arc effective as of September 17, 2025. Given the exigencies of these cases, the Debtors required Arc to commence work immediately. Under these circumstances, no party will be prejudiced, and *nunc pro tunc* relief should be approved. Accordingly, the Debtors believe that approval of the Agreement as of September 17, 2025, on the terms and conditions proposed herein and in the Agency Agreement, is appropriate.

## III. Sales of the Inventory Free and Clear of All Encumbrances is Authorized under Section 363(f) of the Bankruptcy Code.

19. Section 363(f) of the Bankruptcy Code authorizes a debtor to sell assets free and clear of liens, claims, interests and encumbrances if:

8

> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest; (2) such entity consents; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is in bona fide dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

20. Section 363(f) of the Bankruptcy Code authorizes a debtor to sell assets free and clear of liens, claims, interests, and encumbrances if any one of the following conditions is satisfied: "(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest; (2) such entity consents; (3) such interest is a lien at the price at which such property is to be sold is greater than the value of all liens on such property; (4) such interest is in bona fide dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest." 11 U.S.C. § 363(f); *see also In re Nature Leisure Times, LLC*, No. 06-41357, 2007 Bankr. LEXIS 4333, at *7 (Bankr. E.D. Tex. Dec. 19, 2007) ("The language of § 363(f) is in the disjunctive such that a sale free and clear of an interest can be approved if any one of the aforementioned conditions contained in § 363(f) are satisfied.").

21. The Debtors submit that, it is appropriate to sell the Inventory on a final, "as is" basis, free and clear of any and all encumbrances in accordance with section 363(f) of the Bankruptcy Code because one or more of the tests of section 363(f) are satisfied with respect to such Sale. The Debtors are informed that no secured creditor opposes the proposed sales of Inventory and any valid and enforceable liens thereon will attach to the proceeds available to the Debtors (after payment of Arc's fees) in the relative order of existing priorities.

22. Moreover, with respect to any other party asserting a lien, claim, or encumbrance against the Inventory, the Debtors anticipate that they will be able to satisfy one or more of the conditions set forth in section 363(f) of the Bankruptcy Code. In particular, known lienholders, if

any, will receive notice of this Motion and will be given sufficient opportunity to object to the relief requested. Such lienholders that do not object to the relief requested in this Motion should be deemed to have consented.

23. Accordingly, the Debtors request that the Inventory be authorized to be sold free and clear with any such liens, claims, encumbrances, and interests attaching to all proceeds of the sale, net of Arc's fees and expenses, and subject to any rights and defenses of the Debtors and other parties in interest with respect thereto.

24. In approving the sales by Arc (acting on the Debtors' behalf) of the Inventory free and clear of liens, claims, interests, or encumbrances, the Debtors request that the Court find that those who purchase the Inventory through Arc's sale process are entitled to the protections afforded by section 363(m) of the Bankruptcy Code. Courts in this jurisdiction have recognized that "the purpose of § 363(m)'s stay requirement is in furtherance of the policy of not only affording finality to the judgment of the bankruptcy court, but particularly to give finality to those orders and judgments upon which third parties rely." *In re TMT Procurement Corp.*, 764 F.3d 512, 521 (5th Cir. 2014) (citation and internal quotation marks omitted); *see also In re Gilchrist*, 891 F.2d 559, 560 (5th Cir. 1990) ("Section 363(m) patently protects, from later modification on appeal, an authorized sale where the purchaser acted in good faith and the sale was not stayed pending appeal."). This relief is appropriate in light of the opportunity for review and objection provided herein.

## Waiver of Bankruptcy Rule 6004

25. To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h) for the reasons set forth herein.

4912-6423-4600.4 18041.00002

**Notice**

26. The Debtors will provide notice of this Motion to: (a) the Office of the United States Trustee; (b) the Official Committee of Unsecured Creditors; (c) the Debtors' secured creditors; and (d) any party that is entitled to notice pursuant to applicable rules. In light of the nature of the relief requested, no other or further notice need be given.

**Emergency Consideration**

27. The Debtors request emergency consideration of this Motion no later than September 25, 2025. The Debtors believe that emergency consideration is appropriate because prompt approval of the relief requested herein will allow the Debtors to continue to maximize the value of the remaining assets of these estates, while minimizing accruing administrative expenses as discussed above. Accordingly, the Debtors require consideration of the Agreement by the Court as soon as reasonably practicable under the circumstances. This is particularly true where the Debtors are seeking retroactive relief, as discussed with the Court at the September 11, 2025 hearing in these cases. Additionally, and as also discussed with the Court at the September 11, 2025 hearing, the Debtors are pursuing confirmation of a chapter 11 plan that the Debtors anticipate would become effective promptly if confirmed by the Court due to the limited duration of the Debtors' existing consensual cash collateral usage. *See* Docket No. 330. The Debtors' anticipated effective date timing would occur regardless of whether such approval were to occur on either of the confirmation hearing dates of the September 25 or 30, 2025. *See* Docket No. 356. If confirmed, there would be limited time available to obtain consideration of this Motion prior to any effective date. Therefore, the Debtors request emergency consideration of this Motion no later than September 25, 2025.

4912-6423-4600.4 18041.00002

**WHEREFORE**, the Debtors respectfully request that this Court enter the Proposed Order, substantially in the form annexed hereto, and grant such other and further relief as this Court deems just and proper.

Dated: September 18, 2025

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Maxim B. Litvak*
Michael D. Warner (SBT 00792304)
Maxim B. Litvak (SBT 24002482)
Benjamin L. Wallen (SBT 24102623)
700 Louisiana Street, Suite 4500
Houston, TX 77002
Telephone: (713) 691-9385
Facsimile: (713) 691-9407
mwarner@pszjlaw.com
mlitvak@pszjlaw.com
bwallen@pszjlaw.com

-and-

Richard M. Pachulski (admitted *pro hac vice*)
Gregory V. Demo (admitted *pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
rpachulski@pszjlaw.com
gdemo@pszjlaw.com

*Proposed Counsel to the Debtors and Debtors in Possession*

**Certificate of Service**

I certify that on September 18, 2025, I caused a copy of the foregoing document to be served via the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Maxim B. Litvak*
Maxim B. Litvak

4912-6423-4600.4 18041.00002